**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Elder C.C.,

Petitioner,

v.

Todd Blanche, *U.S. Attorney General*; Daren K. Margolin, *Director for Executive Office for Immigration Review*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David Venturella,[1] *Acting Director of Immigration and Customs Enforcement*, David Easterwood, *Acting Director, St. Paul Field Office, Immigration and Customs Enforcement*; and Eric Tollefson, *Kandiyohi County Sherriff*.

Respondents.

Case No. 26-cv-03832 (ECT/ECW)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Petitioner Elder C.C.'s[2] Verified Petition for Writ of Habeas Corpus, filed on August 31, 2026. (Dkt. 1.) This case has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and

---

1 The Petition named Todd M. Lyons as the Acting Director of Immigration and Customs Enforcement. (Dkt. 1 at 1.) David Venturella is now the Acting Director of Immigration of Customs Enforcement. Pursuant to Federal Rule of Civil Procedure 25(d), Venturella is substituted for Lyons, and no further action is required.

2 This District has adopted a policy of using only the first name and last initial of any non-governmental parties in orders and report and recommendations in immigration matters.

Local Rule 72.1. For the following reasons, this Court recommends that the Petition for Writ of Habeas Corpus (Dkt. 1) be granted.

## I. BACKGROUND

Petitioner is a citizen of Mexico. (Dkt. 1 ¶¶ 11, 27; Dkt. 6 ¶ 4.) The Petition alleges, and Respondents (also referred to as "the Government") do not dispute, that in approximately 2018, Petitioner entered the United States without inspection and did not encounter immigration, border patrol, or any other federal officials at that time. (Dkt. 1 ¶¶ 30-31; Dkt. 6 ¶ 4.)

On August 25, 2026, United States Immigration and Customs Enforcement/Office of Enforcement and Removal Operations ("ICE/ERO") officers encountered Petitioner during a vehicle stop of a target (not Petitioner) that had been identified as being present in the United States unlawfully. (Dkt. 6 ¶ 5; Dkt. 6-1 at 2.) Petitioner was a passenger in the vehicle. (Dkt. 6 ¶ 5; Dkt. 6-1 at 2.) ICE/ERO officers asked Petitioner if he had any documents that would allow him to reside in the United States legally and Petitioner stated that he was in the United States illegally. (Dkt. 6 ¶ 5; Dkt. 6-1 at 2.) ICE/ERO officers performed a Department of Homeland Services database search that returned no record of Petitioner ever registering his address with Immigration and Customs Enforcement ("ICE"). (Dkt. 6 ¶ 5; Dkt. 6-1 at 2.) Due to this fact, ICE/ERO determined that Petitioner was a flight risk. (Dkt. 6 ¶ 5; Dkt. 6-1 at 2.) ICE/ERO placed Petitioner under arrest and transported him to the ICE office at Fort Snelling, Minnesota for administrative processing. (Dkt. 6 ¶ 5; Dkt. 6-1 at 2; *see also* Dkt. 1 ¶ 33.)

Deportation Officer Benjamin E. Northwood represented the following in his Declaration in support of the Respondents' response:

> On August 25, 2026, during administrative processing at the ERO Fort Snelling, Minnesota field office, ICE/ERO issued a Notice to Appear (NTA), Form I-862 and served Petitioner. A Supervisory Detention and Deportation Officer (SDDO), issued a Warrant for Arrest of Alien, Form I-200, and ICE/ERO Deportation Officer (DO) served Petitioner the Form I-200.

(Dkt. 6 ¶ 6.) The record of Deportable/Inadmissible Alien ("Form I-213") also admits Petitioner was served a Form I-200 warrant upon arrival to the Fort Snelling field office, after his detention.[3] (Dkt 6-1 at 2.)

On August 25, 2026, ICE/ERO Supervisory Detention and Deportation Officer Randy Langworthy issued the Warrant for Arrest of Alien, Form I-200, for Petitioner. (Dkt. 6-3.) Deportation Officer Haeg signed a Certificate of Service stating he served the I-200 warrant on Petitioner on August 25, 2026 at the Fort Snelling field office and read its contents to Petitioner in Spanish (with no indication that an interpreter was used). (*Id.*) The I-200 warrant stated there is probable cause to believe that Petitioner is removable from the United States based on "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." (*Id.*) The I-200 warrant commanded immigration officers "to

---

[3] The Form I-213 contains some inconsistencies, as it acknowledges that Petitioner is a citizen of Mexico (Dkt. 6-1 at 1-2), but in the "Rights" narrative section, states: "DO Haeg advised [Petitioner] of his right to speak to a consular officer from his country of citizenship. [Petitioner] did not wish to speak to a representative of **Ecuador**" (*id.* at 3 (emphasis added)).

arrest and take into custody for removal proceedings under the Immigration and Nationality Act, the above-named alien." (*Id.*)

On August 25, 2026, Deportation Officer Haeg signed a Certificate of Service indicating he served a Notice to Appear ("NTA"), issued by Deportation Officer Randy Langworthy, on Petitioner. (Dkt. 6-2 at 1, 3.) The NTA, issued August 25, 2026 at Fort Snelling, directs Petitioner to appear for removal proceedings under section 240 of the Immigration and Nationality Act as "an alien present in the United States who has not been admitted or paroled." (*Id.* at 1.) The NTA states that Petitioner is subject to removal from the United States pursuant to section "212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that [he is] an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (*Id.*) Petitioner has a hearing before an immigration judge scheduled for September 21, 2026 to show why he should not be removed from the United States. (*Id.*)

At the moment of Petitioner's seizure, Petitioner was living at a stable home address and had been in the United States for years. (Dkt. 1 ¶ 35.) On the day he was seized and detained by Respondents, Respondents had Petitioner's home address, Petitioner was employed, and Respondents had his employer's address. (*See* Dkt. 6-1 at 1-2.) Petitioner had built ties to his community. (Dkt. 1 ¶ 35.) Petitioner fully complied with the ICE officers and in no way tried to disobey or flee, which Respondents do not dispute. (*Id.*)

On August 25, 2026, after completing administrative processing, ICE/ERO transported Petitioner to Kandiyohi County Jail, where he remains detained. (Dkt. 1 ¶¶ 36-37; Dkt. 6 ¶ 7.)

Petitioner filed this Petition for a Writ of Habeas Corpus on August 31, 2026. (Dkt. 1.) On August 31, 2026, this Court issued an Order requiring Respondents to answer the Petition by September 7, 2026. (Dkt. 4.) The Order required Respondents' answer to include, among other things, "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's detention in light of the issues raised in the habeas petition." (*Id.*) Petitioner was permitted to file a reply to Respondent's answer. (*Id.* at 2.) Respondents filed their response and supporting materials on September 7, 2026 (Dkts. 5-6) and Petitioner filed his reply on September 8, 2026 (Dkt. 8). This matter is now ripe for decision.

## II. LEGAL STANDARD

A federal court may provide habeas relief to a person who is detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). "The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus extends to immigration-related detention." *Diego L. v. Bondi*, No. 26-CV-382 (JMB/DJF), 2026 WL 145206, at *2 (D. Minn. Jan. 20, 2026) (citation modified). Petitioner has the burden of proving his entitlement to relief by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

## III. ANALYSIS

Petitioner seeks release or, in the alternative, a bond hearing in which Respondents, to justify further detention of Petitioner, bear the burden of proof to demonstrate that Petitioner is a flight risk or a danger to the community. (Dkt. 1 at 25.) Petitioner asserts that this relief is warranted because his detention is unlawful under the Fourth and Fifth Amendments to the United States Constitution, as well as the applicable statutes and regulations. (*Id.* at 17-24; Dkt. 7 at 2-11.)

### A. Statutory Basis for Detention

Here, the Government asserts that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2)(A). (Dkt. 5 at 6.) Respondents further argue that section 1225(b) does not require a warrant and therefore section 1357 does not apply (although Respondents do argue in the alternative that they complied with section 1357). (Dkt. 5 at 6-10.) Section 1225 provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Respondents assert that an applicant for admission who cannot prove he is clearly and beyond a doubt entitled to be admitted is to be held without bond—and that the Eighth Circuit's decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), requires denial of the Petition. (Dkt. 5 at 6.)

However, *Avila* does not foreclose Petitioner's constitutional challenges to his detention. In *Avila*, a divided panel of the Eighth Circuit Court of Appeals approved of

DHS's interpretation of the INA to conclude that immigrants already present in the United States can be treated as arriving aliens seeking admission and mandatorily detained under section 1225(b)(2)(A).[4] *See Avila*, 170 F.4th at 1135-36. However, as many courts in this District have found, *Avila* did not address challenges to such detention based on the Fourth and Fifth Amendments. *See, e.g.*, *Felipe S.P. v. Blanche*, No. 26-CV-2212 (NEB/DJF), 2026 WL 1911656, at *2 (D. Minn. July 2, 2026) ("But *Avila* does not close the door on [the petitioner's] as-applied Fifth Amendment challenge."); *Pedro A.D.L.O.O. v. Bondi*, Civil No. 26-1959 (DWF/DJF), 2026 WL 948970, at *2 (D. Minn. Apr. 8, 2026) ("The *Avila* opinion did not address the issue of due process."); *Anthony Javier R. M. v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306, at *2 n.3 (D. Minn. May 29, 2026) ("The Eighth Circuit did not, however, address the due process implications of mandatory detention without a bond hearing under Section 1225(b)(2) for noncitizens who are physically present inside the United States and have developed substantial connections within the country."); *Axel J.M.C. v. Stanski*, Civil No. 26-2281 (JRT/EMB), 2026 WL 1171344, at *2 n.1 (D. Minn. Apr. 29, 2026) (stating that *Avila* did not address constitutional challenges to detention).

---

4 Previously, the majority of courts within this District concluded that section 1225(b)(2)(A) applied only to noncitizens seeking initial entry into the country, while section 1226(a), which allows for an individual's release on bond, applied to those apprehended already in the country. *See Martin R. v. Bondi*, No. 26-CV-168 (JMB/LIB), 2026 WL 115024, at *2 (D. Minn. Jan. 15, 2026) ("Courts have overwhelmingly rejected Respondents' interpretation that section 1225(b)(2) requires the mandatory detention of all noncitizens living in the country who are 'inadmissible' because they entered the United States without inspection.").

More importantly, the Court concludes section 1225 does not foreclose the relief sought because, as a factual matter, Respondents did not detain Petitioner pursuant to 8 U.S.C. § 1225. Sections 236 and 287 correspond to 8 U.S.C. § 1226 and 1357, respectively. Thus, given the plain language of the I-200 warrant in the record here, the Court finds that, in fact, Respondents detained Petitioner pursuant to the framework of 8 U.S.C. § 1226, as opposed to section 1225. *See Wilson P. v. Blanche*, No. 26-CV-3448 (JMB/SGE), 2026 WL 2294612, at *3 (D. Minn. Aug. 10, 2026) (collecting cases). Further, to the extent that the Government is asserting that it has the authority to conduct a warrantless arrest under section 1225 without consideration of section 1357, which they do not directly address, the Court agrees with "[t]he great weight of persuasive authority from this District" and concludes, consistent with that authority, "that a warrantless arrest under 8 U.S.C. § 1225(b)(2) must comply with § 1357." *Jaminton R.B. v. Mullin*, No. 26-CV-3091 (ECT/JFD), 2026 WL 2350324, at *4 (D. Minn. Aug. 13, 2026) (collecting cases).

Respondents also argue Petitioner is foreclosed from challenging his arrest in habeas proceedings due to his pending immigration proceedings. (Dkt. 5 at 2-6.) Respondents cite to *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984), *Arias v. Rogers*, 676 F.2d 1139, 1142-44 (7th Cir. 1982), *Min-Shey Hung v. United States*, 617 F.2d 201, 202 (10th Cir. 1980), and number of district court decisions, many of which rely on *Arias* in support of this argument.[5] (*Id.*) However, Respondents do not "explain how the cases

[5] The Court has reviewed the district court cases to the extent the case numbers given by Respondents correspond to actual cases. Those cases are as follows: *Rodriguez*

they cite **apply in the face of 8 U.S.C. § 1226(a)**, which requires 'a warrant issued by the Attorney General' as a predicate to discretionary detention under § 1226(a)." *Alberto N. v. Bondi*, No. 26-CV-1228 (ECT/ECW), 2026 WL 412748, at *2 (D. Minn. Feb. 13, 2026) (emphasis added) (addressing Respondents' reliance on *Lopez-Mendoza*, 468 U.S. at 1039, and *Arias*, 676 F.2d at 1142). In *Min-Shey Hung*, the Tenth Circuit concluded "deportation proceedings thus commenced must be allowed to proceed without the intervention of proceedings in the district court challenging the arrest." 617 F.2d at 202. However, the Tenth Circuit rendered this finding in the context of determining whether the purportedly unlawful arrest invalidated deportation proceedings, not whether it

---

*v. Olson*, 814 F. Supp. 3d 945, 955 (N.D. Ill. 2026) ("[P]etitioner's deportation proceedings have begun. Thus, *Arias* requires that any issues concerning his arrest are not redressable in this habeas petition."); *Licta Vega v. Mullin*, 26-cv-00554-jdp (W.D. Wis. Aug. 18, 2026) (describing *Arias* as holding "that a noncitizen cannot challenge the legality of his arrest in habeas corpus proceedings if his removal proceedings were initiated with reasonable promptness after his arrest"); *Singh v. Moss*, No. 26-cv-04785-DAD-CKD P, 2026 WL 2255220, at *3 (E.D. Cal. Aug. 5, 2026) ("To the extent petitioner argues his initial arrest was unlawful under the Fourth Amendment, he is not entitled to release from custody even if the initial seizure violated the Fourth Amendment."); *Singh v. Sommer*, No. 26-CV-5013, 2026 WL 2042296, at *2 (D. Neb. July 14, 2026) ("Generally speaking, an unlawful warrantless arrest isn't a get-out-of-jail-free card if a lawful basis to detain someone is subsequently established."); *Ruelas Castellano v. Blanche*, No. 26-cv-112-wmc (W.D. Wis. May 28, 2026) (relying on *Arias* for the proposition that the petitioner's claim that his arrest lacked a warrant or probable cause in violation of the Fourth Amendment is not actionable in habeas corpus proceeding because, once deportation proceedings have begun, the legality of the detention based on the absence of a warrant can no longer be tested by way of a habeas corpus proceeding); *Navdeep v. Warden*, No. EP-26-CV-829-KC (W.D. Tex. Apr. 23, 2026) ("[W]here detention is pursuant to that deportation proceeding, habeas relief is unavailable to remedy the illegal arrest."); and *Rodrigues De Oliveira v. Joyce*, No. 25-cv-00291-LEW, 2025 WL 2916636, at *1 (D. Me. Oct. 14, 2025) ("This Court lacks the jurisdiction to award relief to Petitioner by means of a habeas order that directly reviews the immigration judge's bond determination."). (Dkt. 5 at 4-5.)

invalidated the petitioner's detention. *See id.* at 202-03. Indeed, when discussing the validity of the petitioner's detention, the Tenth Circuit held that the lack of a warrant did not invalidate petitioner's detention because respondents complied with 8 U.S.C. § 1357(a)(2), which allows for arrest without a warrant in certain cases. *Id.* at 202; *see also* 8 U.S.C. § 1357(a)(2). In other words, *Min-Shey Hung* does not stand for the proposition that a petitioner cannot challenge their detention once deportation proceedings have been initiated.

Moreover, the Court rejects the rationale of the courts relied upon Respondents, as the habeas statute is explicit that a federal court may provide habeas relief to a person who is "in custody in violation of the Constitution **or laws** or treaties of the United States." 28 U.S.C. § 2241(c)(3) (emphasis added). Here, Petitioner claims Respondents placed him in custody in violation of sections 1226(a) and 1357. Respondents claim that, even assuming that "some defect existed for Petitioner's arrest, it [sic] would not grant Petitioner the relief he seeks." (Dkt. 5 at 10.) They assert that "warrantless arrests are never a basis for release" in the criminal-law context, "where constitutional protections are at their highest." (*Id.*) Respondents further argue that, consequently, "release cannot be a proper remedy in immigration cases, where Congress regularly makes rules that would be unacceptable if applied to citizens." (*Id.* at 10-11 (citation modified).) However, courts within this District have rejected the proposition a petitioner is foreclosed from challenging his arrest in habeas proceedings due to his pending immigration proceedings:

> The argument goes like this: the remedy for an illegal arrest is not to prohibit a prosecution, nor to overturn a valid conviction, but the exclusion of evidence; the exclusionary rule is not an appropriate remedy in most immigration cases; thus, if suppression of evidence is not an appropriate remedy in an immigration case for a Fourth Amendment violation, then it follows that release from custody cannot be the appropriate remedy either. *Id.* But this argument fails because its syllogism depends on an incorrect premise. True, in *United States v. Crews*, the Supreme Court rejected the defendant's claim that because his arrest was not supported by probable cause, he should be immune from criminal prosecution. 445 U.S. 463, 474 (1980). And in *INS v. Lopez-Mendoza*, the Court rejected the noncitizen's claim that his deportation should be prohibited because immigration agents lacked a warrant to search the premises where he was arrested. 468 U.S. 1032, 1035, 1039 (1984). These cases might provide support for the Respondents' argument if Ms. N.V. were asking this Court to prohibit the government from initiating or prosecuting removal proceedings against her. She is not. Instead, she seeks core habeas relief—release from custody. Seeking release from custody in an immigration habeas case based on an illegal arrest is not akin to a criminal defendant's claim that his unlawful arrest should prohibit the government from prosecuting him for a crime, nor is it like a noncitizen's effort to prohibit the government from pursuing removal proceedings.

*Emily Andreina N.V. v. Blanche*, No. 26-CV-2570 (KMM/EMB), 2026 WL 2209844, at *4 (D. Minn. July 31, 2026) (footnote omitted). Petitioner "is asking the Court for a release from custody, not 'to prohibit removal proceedings against him.'" *Manuel P.N. v. Easterwood*, No. 26-CV-3799 (ECT/DJF), ECF No. 10 (*R. & R.*) at 10 (D. Minn. Sept. 8, 2026) (quoting *Ruben C.R. v. Mullin*, No. 26-CV-2950 (NEB/DTS), ECF No. 13 at 6 (D. Minn. Aug. 7, 2026)), *objections filed*, ECF No. 11 (D. Minn Sept. 11, 2026).

Accordingly, the Court considers the merits of Petitioner's claims, starting with the validity of his arrest under section 1226(a).

## B. Validity of Petitioner's Arrest Under Section 1226(a)

Section 1226(a) provides in relevant part that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). ICE's regulations empower officials, "**[a]t the time of issuance of [a] notice to appear, or at any time thereafter** and up to the time removal proceedings are completed," to arrest and take into custody a noncitizen "under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1) (emphasis added). There are two issues raised related to the issuance of the I-200 warrant: (1) the timing of the issuance of the warrant relative to Petitioner's arrest; and (2) the timing of the issuance of the warrant relative to issuance of the NTA. The Court discusses these in turn.

An I-200 warrant must be issued prior to arrest. *See id.*; *see also Andrés Felipe C. C. v. Blanche*, No. 26-CV-3220 (LMP/SGE), 2026 WL 2137334, at *2 (D. Minn. July 24, 2026) ("Section 1226(a) requires only that an I-200 warrant be *issued*, not *served*, prior to an arrest."); *Jaminton R.B.*, 2026 WL 2350324, at *3 (citing *Andrés Felipe C. C.* as "recognizing that warrant must be issued prior to arrest"). Here, Petitioner was taken into custody "during a traffic stop of a target" (who was not Petitioner) and then taken to Fort Snelling for administrative processing. (Dkt. 6 ¶ 5; Dkt. 6-1 at 2.) It was not until he arrived at the Fort Snelling Field Office that Petitioner was served with an I-200 warrant. (Dkt. 6 ¶ 6; Dkt. 6-1 at 2; Dkt. 6-3.) Indeed, Respondents concede that "the record is clear that a warrant was not issued until processing" and instead "focus on § 1357, warrantless arrest." (Dkt. 5 at 8.)

For these reasons, the Court finds Petitioner's arrest was pursuant to an invalid warrant and therefore unlawful. Unless Respondents can show the warrantless arrest complied with the law, immediate release is the appropriate remedy. *See Victor P. v. Blanche*, No. 26-CV-3217 (JMB/SGE), 2026 WL 2110732, at *3 (D. Minn. July 22, 2026) (collecting cases).

**C. Validity of Warrantless Arrest**

Because Respondents assert that the warrantless arrest was proper under section 1225(b), the Court examines whether Respondents complied with section 1357. *See Jaminton*, 2026 WL 2350324, at *3-4; *see also Jorge Anibal P. P. v. Blanche*, No. 26-CV-3125 (LMP/LIB), 2026 WL 2017765, at *2 (D. Minn. July 13, 2026) ("Without an administrative warrant in hand at the time of [the petitioner's] arrest, the arrest must be judged by the warrantless-arrest framework of 8 U.S.C. § 1357(a)(2)." (quoting *Felix Alberto J. M. v. Blanche*, No. 26-CV-2944 (LMP/DLM), 2026 WL 1906596, at *1 (D. Minn. July 2, 2026))). Section 1357 provides in relevant part:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—
>
> * * *
>
> **(2)** to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, **if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation *and* is likely to escape before a warrant can be obtained for his arrest,** but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States[.]

8 U.S.C. § 1357(a)(2) (emphasis added). Reason to believe "means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010); *see also Winston N.-P. v. Blanche*, No. 26-CV-3368 (LMP/JFD), 2026 WL 2268432, at *2 (D. Minn. Aug. 6, 2026) (citing *Quintana*, 623 F.3d at 1239).

Petitioner argues that there was no probable cause to believe that Petitioner was likely to escape before a warrant could be obtained. (Dkt. 1 ¶ 35.) "Likely to escape" under 8 U.S.C. § 1357(a)(2) means "likely to evade detention by immigration officers." *Walther Ademir A. S. v. Blanche*, No. 26-CV-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (quoting *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026)). This "inquiry considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizen at another clearly identifiable location." *Winston N.-P.*, 2026 WL 2268432, at *2 (quoting *Walther Ademir A. S.*, 2026 WL 1734906, at *3) (citation modified). In other words, the Court must not only look at whether Petitioner "was likely to leave the scene of the encounter before ICE officers could obtain a warrant[,] but [also] whether it was likely that ICE officers would be able to locate [Petitioner] after obtaining a warrant." *Id.*; *see also Hector G.P.R. v. Warden of Freeborn Cnty. Adult Det. Ctr.*, No. 26-CV-3048 (NEB/DLM), 2026 WL 2390280, at *4 (D. Minn. Aug. 7, 2026) ("The question, therefore, is not merely whether Hector G.P.R. was likely to flee from the roadside stop, but whether ICE would be able to locate him after obtaining a warrant for his arrest.").

Respondents make the following argument regarding probable cause to believe that Petitioner was a flight risk:

> Probable cause that Petitioner was a flight risk is even clearer. ICE/ERO officers did not have a fixed address for the Petitioner, and the subjects of the vehicle were in complete control of the vehicle and could have easily left the scene and never to be found again. Decl., ¶ 5. No reasonable person could believe that Petitioner would sit idly by while officers obtained a warrant.

(Dkt. 5 at 10.)

At the moment of Petitioner's seizure, Petitioner was living at a stable home and had been in the United States for years. (Dkt. 1 ¶ 35.) Petitioner had built ties to his community. (Dkt. 1 ¶ 35.) Petitioner fully complied with the ICE officers and in no way tried to disobey or flee, which Respondents do not dispute. (*Id.*) Petitioner was employed at the time of his detention and, on the day he was seized and detained, Respondents had his home address and his employer's name and address. (*See* Dkt. 6-1 at 1-2.) There is no indication the arresting agents asked for information when they seized him that would permit ICE to locate Petitioner at a later date, including whether Petitioner had a "fixed address"—which Petitioner asserts he did (Dkt. 1 ¶ 35)—or whether Petitioner was employed (even though, based on the Form I-213, Respondents had this information as of August 25, 2026, the date of Petitioner's arrest (Dkt. 6-1 at 2)). Instead, based on the Form I-213, the sole basis for "deem[ing]" Petitioner a "flight risk" was that there was "no record of [Petitioner] ever registering his address with [ICE]." (*Id.*) However, "[j]ust because a noncitizen is unlawfully present in the United States does not mean that he or she is likely to escape." *Francisco M.A. v. Blanche*, Civil No. 26-2032 (JRT/EMB), 2026 WL 1229701, at *3 (D. Minn. May 5, 2026). It is

Respondents' "burden to make a particularized assessment into whether the noncitizen is likely to evade detention." *Winston N.-P.*, 2026 WL 2268432, at *3 (citation modified).

Courts have concluded that this risk "of escape is lower when the individual has resided in the country for a lengthy period of time and has strong community ties." *Id.* (quotation marks omitted). Based on the record, the information available to the ICE/ERO officers when Petitioner was arrested (had they inquired) was that Petitioner had been in the country since 2018 and had strong connections to the community (including employment). Respondents have not offered any evidence that Petitioner resisted his arrest or tried to flee, and nothing in the record suggests they would not be able to locate Petitioner after they had obtained a warrant. Respondents' argument that "the subjects of the vehicle were in complete control of the vehicle and could have easily left the scene and never to be found again" (Dkt. 5 at 10) fails for at least two reasons, including that this was not the basis for deeming Petitioner a flight risk at the time and that Petitioner cooperated with the ICE/ERO officers during the stop and was truthful with them about them about his immigration status. *See Abelardo M.-G. v. Easterwood*, No. 26-CV-3479 (LMP/SGE), 2026 WL 2531525, at *3 n.6 (D. Minn. Aug. 27, 2026) (rejecting a "brightline rule" that would "permit[] warrantless arrests anytime a noncitizen is found in a vehicle"); *Vladimir G. v. Easterwood*, No. 26-CV-2971 (JMB/ECW), 2026 WL 1786418, at *3 (D. Minn. June 22, 2026) (rejecting a "per se rule that any non-citizen who an officer believes is removable and who is in a vehicle is 'likely to escape'"); *see also Manuel P.N.*, No. 26-CV-3799 (ECT/DJF), ECF No. 10 (*R. & R.*) at 7I ("Manuel stopped his vehicle voluntarily without evasion and spoke candidly

with the ICE officers. He was fully honest about both his identity and his lack of legal immigration status. There is no evidence that he tried to run or in any other way resisted his arrest or transportation to the St. Paul ERO field office. These facts do not establish a likelihood of escape." (citation modified)).

For the reasons stated above, the Court finds there was not probable cause to believe that Petitioner was likely to escape before a warrant could be obtained. Therefore, the warrantless arrest of Petitioner was invalid under section 1357. *See Jorge Anibal P. P.*, 2026 WL 2017765, at *4.

* * *

In sum, the Court concludes that Petitioner was arrested pursuant to an invalid warrant, and further that Respondents have not shown that his arrest complied with section 1357(a)(2). The Court recommends granting the Petition[6] and ordering Petitioner's immediate release. *See Jaminton R.B.*, 2026 WL 2350324, at *4 (collecting cases).

Given the Court's recommendation for immediate release based on Respondents' arrest of Petitioner in violation of the laws of the United States, the Court finds that an exigency requires a shorter period for objections to this Report and Recommendation and responses to those objections. Consequently, pursuant to its inherent authority and Local Rule 72.2(a)(1), the Court sets a 7-day expedited deadline for objections to this Report and Recommendation and responses to those objections. *See* D. Minn. LR 72.2(a)(1) ("A

[6] Given this finding, the Court does not address Petitioner's other arguments for relief.

party may file and serve objections to the order within 14 days after being served with a copy, **unless the court sets a different deadline**.") (emphasis added); *see also United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) ("We also reject appellant's suggestion that the trial court erred in allowing appellant less than the full 10-day period provided by 28 U.S.C. s 636(b)(1) to file objections to the magistrate [judge]'s recommendation that the motion to suppress evidence and the motion to dismiss be denied. Ten days is a maximum, not a minimum.[7] The court may require a response within a shorter period if exigencies of the calendar require, as they did in this instance."), *cert. denied*, 435 U.S. 955 (1978); *Harper v. Everson*, Case No. 3:15-CV-00575-JHM, 2016 WL 8201785, at *9 (W.D. Ky. June 27, 2016) ("Although [Rule 72(a) of the Federal Rules of Civil Procedure] provides for filing objections within 14 days of being served with a copy of the order, the Court exercises its inherent authority to shorten this time period to 7 days given the expedited nature of the discovery and the impending September 15-16 date for the preliminary injunction hearing.") (collecting cases); *Sabal Trail Transmission, LLC. v. 7.72 Acres in Lee Cnty.*, No. 3:16-CV-173-WKW, 2016 WL 10789585, at *1 (M.D. Ala. June 6, 2016) ("28 U.S.C. § 636(b)(1)(C) does provide a normal objections period of fourteen days to a magistrate judge's report and recommendation. However, where exigencies exist, a court may shorten the time for filing objections.") (collecting cases); *Sergio R.V.-P. v. Mullin*, No. 26-CV-02361 (NEB/ECW), 2026 WL 1727869, at *7 (D. Minn. May 29, 2026) (holding the same), *R.*

[7] Rule 72 set a 10-day period for objections as of the date of *Barney's* issuance. *See* Fed. R. Civ. P. 72, Advisory Committee Notes (2009).

*& R. adopted*, 2026 WL 1725810 (D. Minn. June 15, 2026). Any objections to this Report and Recommendation are due on **September 21, 2026**. Responses to objections are due on **September 28, 2026**.

## IV. RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT** the Petition (Dkt. 1) be **GRANTED** insofar as:

1. Petitioner's current detention be declared unlawful under the Constitution and laws of the United States;

2. Respondents be ordered to immediately release Petitioner from custody in Minnesota and, in any case no later than 11:00 a.m. Central Time on the day following an Order adopting this Report and Recommendation;

3. Respondents be ordered to coordinate Petitioner's release with Petitioner's counsel;

4. Respondents be ordered to release Petitioner with all personal documents and belongings, including his driver's license (without alteration or defacement), and without any conditions of release, such as ankle monitors or tracking devices, where Respondents' inability to immediately comply with this requirement shall not be a basis for delaying Petitioner's release; and

5. Respondents be required within 72 hours after issuance of an Order adopting this Report and Recommendation to provide the Court with a status update confirming Petitioner's release and other compliance with the Order.

Dated: September 14, 2026

s/ *Elizabeth Cowan Wright*
Elizabeth Cowan Wright
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. **The Court modifies this deadline such that objections are due on or before September 21, 2026.** *See* D. Minn. LR 72.2(a)(1) ("A party may file and serve objections to the order within 14 days after being served with a copy, unless the court sets a different deadline."); *see also Barney*, 568 F.2d at 136; *Harper*, 2016 WL 8201785, at *9; *Sabal Trail Transmission*, 2016 WL 10789585, at *1; *Sergio R.V.-P.*, 2026 WL 1727869, at *7. **Responses to objections are due on or before September 28, 2026.** All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).